UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| FREDERICK A. MORRIS, )<br>    *Plaintiff*, )<br>)<br>    *vs.* )<br>)<br>CAROLYN COLVIN, Acting Commissioner of )<br>Social Security, )<br>    *Defendant.* ) | 1:14-cv-02013-JMS-MJD |

## **ENTRY ON THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Mr. Morris applied for supplemental security income on January 19, 2010, alleging a disability onset date of November 1, 2003. [Filing No. 13-5 at 2.] After a series of administrative proceedings and appeals, including a hearing on May 4, 2011 before Administrative Law Judge Angela Miranda (the "ALJ"), the ALJ issued a finding on February 17, 2012 that Mr. Morris was not entitled to supplemental security income. [Filing No. 13-2 at 89-128; Filing No. 13-3 at 4-16.] Mr. Morris requested that the Appeals Council review the ALJ's decision, and on May 8, 2013, the Appeals Council remanded the matter to the ALJ. [Filing No. 13-3 at 22-25.]

On remand from the Appeals Council, the ALJ held a second hearing on October 30, 2013. [Filing No. 13-2 at 36-86.] She then issued a finding on April 24, 2014 that Mr. Morris was not entitled to supplemental security income. [Filing No. 13-2 at 13-27.] In October 2014, the Appeals Council denied Mr. Morris' request for review of the ALJ's April 24, 2014 decision, [Filing No. 13-2 at 2-4], rendering that decision the final decision of the Defendant, Commissioner of the Social Security Administration ("the Commissioner"), for the purposes of judicial review. 20 C.F.R. § 404.981. Mr. Morris then filed this action under 42 U.S.C. § 405(g), requesting that the Court review the Commissioner's most recent denial.

The Court referred the matter to the Magistrate Judge, who issued his Report and Recommendation on August 7, 2015. [Filing No. 22.] In the Report and Recommendation, the Magistrate Judge found that the ALJ's decision was supported by substantial evidence, albeit different evidence than that relied upon by the ALJ, and recommended that the Court affirm the Commissioner's decision that Mr. Morris is not entitled to supplemental security income. [Filing No. 22.] Mr. Morris timely filed an Objection to the Magistrate Judge's Report and Recommendation, which is presently pending before the Court. [Filing No. 23.]

## I.
### STANDARD OF REVIEW

When the Court refers a dispositive matter to the Magistrate Judge – as it did here – a party may object to the Magistrate Judge's report and recommendation and "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In conducting its de novo review of the Magistrate Judge's Report and Recommendation, the Court will review this matter as it does other social security appeals. Specifically, the Court is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotation omitted).

The ALJ must apply the five-step sequential inquiry set forth in 20 C.F.R. § 404.1520(a)(4) to determine:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995) (citation omitted).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and, if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An

award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Mr. Morris was forty-two years old at the time of his application for supplemental security income on January 19, 2010. [Filing No. 13-5 at 2.] He has a tenth-grade education, and no significant work experience due to being incarcerated for several years. [Filing No. 13-2 at 48; Filing No. 13-2 at 92-93.] Mr. Morris claims he is disabled based on a variety of impairments, which will be discussed as necessary below.[1]

Using the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4), the ALJ denied Mr. Morris supplemental security income, after remand from the Appeals Council, in an April 24, 2014 opinion. The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Mr. Morris had not engaged in substantial gainful activity[2] since the date he applied for supplemental security income. [Filing No. 13-2 at 15.]

- At Step Two, the ALJ found that Mr. Morris suffered from several severe impairments including: "(1) residual effect of cerebral vascular accident with some left sided weakness; (2) cardiac dysfunction described as hypertensive cardiovascular disease, hypertension with complaints of headaches, risk factors including hypercholesterolemia, atherosclerotic disease, obesity and tobacco abuse, leading to non-ST elevation myocardial infarction with stent of the right coronary artery for coronary artery disease; and (3) mental impairments described as anxiety disorder with features of generalized anxiety disorder and post-traumatic stress disorder, major depressive disorder, antisocial personality

---

[1] Mr. Morris detailed pertinent facts in his opening brief, and the Commissioner did not dispute those facts. Because those facts implicate sensitive and otherwise confidential medical information concerning Mr. Morris, the Court will simply incorporate those facts by reference herein. Specific facts will be articulated as needed.

[2] Substantial gainful activity is defined as work activity that is both substantial (*i.e.* involves significant physical or mental activities) and gainful (*i.e.* work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and 20 C.F.R. § 416.972(a).

    disorder, and cocaine and alcohol dependence in full sustained remission." [Filing No. 13-2 at 15.]

- At Step Three, the ALJ found that Mr. Morris did not have an impairment or combination of impairments that met or medical equaled one of the listed impairments. The ALJ concluded that Mr. Morris had the residual functional capacity ("RFC") to perform sedentary work and can "occasionally lift and carry 10 pounds and [can] frequently lift and carry light articles weighing less than 10 pounds. [He] has the capacity to stand and/or walk 2 hours in an 8-hour workday and has the capacity to sit 6-8 hours in an 8-hour workday and may use an assistive device such as a cane. [He] may require the ability to change position while at work but this can be met at normal break/meal periods or without leaving the workstation. [He] has the capacity to frequently push and pull up to the capacity for lifting and carrying. [He] has the capacity to frequently balance and occasionally stop, kneel, crouch, crawl, and climb stairs and ramps. [He] should never climb ladders, ropes, or scaffolds. [He] has the capacity to frequently reach, handle, and finger and has no limitations in the ability to feel. Environmentally, [he] should have only occasional exposure to wetness, humidity, extremes of temperature (cold and heat), and dust, fumes, or other pulmonary irritants. [He] can have no more than occasional exposure to workplace hazards, such as unprotected heights and machinery with fast moving parts. Mentally [he] has the capacity to understand, remember, and carry out simple, routine tasks. In so doing, [he] has the capability to utilize common sense understanding to carry out instructions, to deal with several concrete variables in standardized situations, and to sustain this mental ability consistent with the normal demands of a workday including regular breaks and meal periods. [He] has the capacity to appropriately interact with supervisors and for occasional interaction with coworkers and the general-public….[He] has the capacity to identify and avoid normal work place hazards and to adapt to routine changes in the work place." [Filing No. 13-2 at 16-26.]

- The ALJ did not need to consider Step Four, because Mr. Morris has no past relevant work. [Filing No. 13-2 at 26.]

- Finally, at Step Five, considering Mr. Morris' age, education, work experience, RFC, and the testimony of a vocational rehabilitation expert, the ALJ determined that jobs existed in the State of Indiana that Mr. Morris could perform, such as bench hand, final assembler, and document preparer. [Filing No. 13-2 at 26-27.]

Based on these findings, the ALJ concluded that Mr. Morris was not entitled to receive supplemental security income. [Filing No. 13-2 at 27.]

## III.
### DISCUSSION

Mr. Morris raises three main arguments in support of his request that the Court remand this matter to the SSA: (1) that the ALJ's finding that Mr. Morris' impairments do not meet or medically equal a listed impairment is not supported by substantial evidence, [Filing No. 17 at 13-19]; (2) that the ALJ's RFC finding is not supported by substantial evidence, because the ALJ erroneously discounted the opinions of two of Mr. Morris' treating physicians and because the ALJ's credibility determination was allegedly erroneous, [Filing No. 17 at 19-25]; and (3) that the ALJ's finding that Mr. Morris can perform other work which exists in significant numbers is not supported by the relevant legal standards, [Filing No. 17 at 25-26]. The Magistrate Judge rejected all of Mr. Morris' arguments in his Report and Recommendation, [Filing No. 22], and Mr. Morris reiterated those arguments in his Objection, [Filing No. 23]. The Commissioner did not respond to Mr. Morris' Objection. The Court will consider each of Mr. Morris' arguments in turn.

### A. Failure to Meet or Equal Listing 11.04

The ALJ addressed Listing 11.04 by stating:

> Listing 11.04 governs assessments of neuropathy and requires a showing of motor aphasia resulting in ineffective communication, or significant and persistent disorganization of motor function in two extremities that results in a loss of movement, gait, and station. The claimant's gait was normal at a 2010 physical examination….His gait was unsteady during other examinations, but the record did not link a loss of ambulation to neurological abnormalities….The claimant's loss of grip strength on the left was described as "slight"….The evidence does not show extensive motor disorganization or similar condition. The claimant's condition does not meet or equal listing 11.04. The single examination and consultative examiner report by Dr. Daniela Djodjeva fails to provide evidence sufficient to meet this listing and the accompanying Medical Source Statement suggests the claimant is able to sustain walking, standing, and sitting for a total of eight hours in an 8-hour work day. Furthermore, Dr. Djodjeva offered an opinion [that] the use of a cane to ambulate is required but such use does not establish the level of persistent disorganization of motor function required by 11.00(C).

[Filing No. 13-2 at 17.]

In his Report and Recommendation, the Magistrate Judge found that the ALJ's discussion of Listing 11.04 was adequate. The Magistrate Judge rejected Mr. Morris' argument that the ALJ should have mentioned Dr. Djodjeva's notation that Mr. Morris had decreased grip strength and impaired fine finger manipulative ability in his left hand. [Filing No. 22 at 8.] He found that the ALJ had created a logical bridge from Dr. Djodjeva's report to the conclusion. [Filing No. 22 at 9.] As for Mr. Morris' use of a cane, the Magistrate Judge found that the use of a cane was not enough by itself to meet Listing 11.04 and that, in any event, Mr. Morris had not shown that he had a persistent and significant disorganization of motor function in two extremities, as required to meet Listing 11.04. [Filing No. 22 at 9.] Finally, the Magistrate Judge found that the ALJ properly determined that an updated medical opinion was not necessary because the ALJ gave the older medical opinions limited weight. [Filing No. 22 at 10.]

Mr. Morris argues in his Objection that the ALJ's conclusion that "the record did not link a loss of ambulation to neurological abnormalities" does not make sense and he "cannot discern how the ALJ concluded his profoundly impaired gait was not a product of his neurological abnormalities." [Filing No. 23 at 2.] Mr. Morris cites to evidence in the record of his facial paralysis, left-sided weakness, and left hemiparesis after his stroke in 2002. [Filing No. 23 at 2-3.] Mr. Morris contends that the ALJ and the Magistrate Judge improperly discounted Dr. Djodjeva's notations that Mr. Morris had decreased grip strength, impaired fine finger manipulative ability, and an inability to zip, unzip, button, or unbutton with his left hand, which would show a significant disorganization of motor function with another extremity – his left upper extremity. [Filing No. 23 at 3.] Mr. Morris argues that the ALJ was not entitled to ignore objective, clinical findings that implicated a listed impairment. [Filing No. 23 at 4.]

- 7 -

An individual meets Listing 11.04 when he has "one of the following more than 3 months post-vascular accident: A. Sensory or motor aphasia resulting in ineffective speech or communication; or B. Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station…." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.04.  Mr. Morris argues that he meets Listing 11.04 because he has "significant and persistent disorganization of motor function" in his lower left extremity, as evidenced by his unsteady gait and use of a cane, and in his upper left extremity as shown by his decreased grip strength, impaired fine finger manipulative ability, and inability to zip, unzip, button, or unbutton with his left hand.  [Filing No. 23 at 2-3.]

First, as to Mr. Morris' lower left extremity, the ALJ states that, although Mr. Morris demonstrated an unsteady gait on several occasions, "the record did not link a loss of ambulation to neurological abnormalities."  [Filing No. 13-2 at 17.]   The Court finds that this explanation, without more, is not enough to build a logical bridge to the ALJ's conclusion that Mr. Morris was not experiencing "significant and persistent disorganization" in his lower left extremity as a result of his CVA..  The evidence shows that Mr. Morris suffered a stroke in 2002 that immediately affected his balance, [*see, e.g.*, Filing No. 13-9 at 29 (hospital records from after the stroke stating that Mr. Morris "leans a lot – will benefit from quad cane.  Balance standing – poor")], and there is no evidence in the record from which to conclude that his unsteady gait was the result of anything other than his stroke.

Moreover, the medical evidence indicates that Mr. Morris' stroke caused weakness on his left side.  [*See, e.g.*, Filing No. 13-7 at 27 (Nurse Practitioner notes from December 2009 stating that Mr. Morris "[h]as a history of previous stroke at 37 left side weakness residual"); Filing No. 13-8 at 30 (April 2010 notes from Good Samaritan Health Clinic stating that Mr. Morris "[h]ad

CVA in prison" and "L sided hemiparesis" and was "still impaired because of L sided hemiparesis"); Filing No. 13-9 at 7 (July 2002 hospital records noting that Mr. Morris had suffered "acute cerebrovascular accident with left hemiparesis").] The ALJ's explanation that "the record did not link a loss of ambulation to neurological abnormalities" simply is not enough to explain why the ALJ disregarded evidence that Mr. Morris experienced left-sided weakness after his stroke, and had an unsteady gait.

Additionally, the ALJ similarly ignored evidence of Mr. Morris' weakened grip and "disorganization" in his upper left extremity, without adequately explaining why that evidence was being discounted. Specifically, the ALJ stated that "[t]he claimant's loss of grip strength on the left was described as 'slight,'" that "[t]he evidence does not show extensive motor disorganization or similar condition," and that Dr. Djodjeva's "single examination and consultative examiner report…fails to provide evidence sufficient to meet this listing…." [Filing No. 13-2 at 17.] The ALJ does not explain, however, why Dr. Djodjeva's notation that Mr. Morris could not zip or unzip, or button or unbutton, with his left hand was not sufficient to show the "disorganization" in his upper left extremity necessary to meet Listing 11.04. [*See* Filing No. 13-12 at 40.] The ALJ does not mention Mr. Morris' inability to zip, unzip, button, or unbutton, merely noting that Dr. Djodjeva only examined Mr. Morris once. But being able to zip, unzip, button, and unbutton are objective evaluations, whose outcomes do not vary depending on how many times Dr. Djodjeva had examined him. The ALJ's discounting, or even disregard, of Dr. Djodjeva's records related to Mr. Morris' inability to perform these basic tasks with his left hand is inadequate because there is no logical bridge from the medical records to the ALJ's conclusion.

In sum, the Court finds that the ALJ did not build a logical bridge from the evidence to her conclusion that Mr. Morris did not meet or equal Listing 11.04. The Court sustains Mr. Morris'

Objection to the Magistrate Judge's Report and Recommendation on this issue, and remands this matter to the SSA for further consideration. The Court will, however, address the additional issues raised by Mr. Morris in his Objection.

### B. The ALJ's RFC Finding

Mr. Morris argues that the ALJ's RFC finding is not supported by substantial evidence, focusing on the weight the ALJ gave the opinions of Dr. Roth and Dr. Djodjeva, and also on the ALJ's credibility determination. [Filing No. 23 at 5-14.]

#### 1. Dr. Roth

The ALJ gave Dr. Roth's opinion that Mr. Morris could not even perform sedentary work "limited weight" because she found that Dr. Roth "based his assessment heavily on [Mr. Morris'] subjective allegations." [Filing No. 13-2 at 24.] The ALJ stated that Dr. Roth "took [Mr. Morris'] reports of 'back pain' at face value without objective corroboration," and that "Dr. Roth's opinion is at odds with the conservative treatment [Mr. Morris] received aside from the stroke and cardiac incidents with brief hospitalizations." [Filing No. 13-2 at 24-25.] The ALJ also noted that Mr. Morris' "long-term treatment was more conservative, composed of often minimal examinations, and came in the form of outpatient visits and medications." [Filing No. 13-2 at 25.]

In his Report and Recommendation, the Magistrate Judge found that the ALJ properly assessed Dr. Roth's opinion because Dr. Roth's notation of "back pain" as a diagnosis indicates that Dr. Roth took Mr. Morris' subjective accounts of back pain into account without corroborating objective evidence. [Filing No. 22 at 12.] The Magistrate Judge also noted that because the ALJ gave limited weight to Dr. Djodjeva's opinion, Mr. Morris' argument that Dr. Roth's opinion is supported by Dr. Djodjeva's opinion is unavailing. [Filing No. 22 at 12.]

Mr. Morris argues in his Objection that Dr. Ross cited to the medical evidence and objective evidence in support of his conclusions, and did not rely heavily on Mr. Morris' subjective allegations. [Filing No. 23 at 6.] Mr. Morris also asserts that Dr. Roth's reference to Mr. Morris' back pain does not show that Dr. Roth relied too much on Mr. Morris' subjective allegations. [Filing No. 23 at 6-7.] Mr. Morris argues that the ALJ improperly concluded that Dr. Roth's conclusions were inconsistent with other substantial evidence, such as his conservative treatment of his neurological deficits. [Filing No. 23 at 8.] Mr. Morris contends that he was in prison when he suffered his stroke, it is not clear that he could have obtained any effective treatment when he was released from prison a decade after the stroke, and he was limited to low-income clinics for treatment due to financial constraints. [Filing No. 23 at 8.]

Dr. Roth completed a Physical Residual Functional Capacity Questionnaire on October 1, 2013, in which he stated that one of Mr. Morris' diagnoses was "[h]istory of CVA with resulting left arm pain & weakness." [Filing No. 13-12 at 33.] Dr. Roth noted that Mr. Morris suffered from back pain. [Filing No. 13-12 at 33.] He also listed in response to a request to identify "the clinical findings and objective signs," that Mr. Morris had "weakness and hyper-reflexion [left] arm and leg [and] unsteady gait." [Filing No. 13-12 at 33.] Dr. Roth noted Mr. Morris' back pain as a diagnosis, in response to a request to list Mr. Morris' symptoms, and in response to a request stating "[i]f your patient has pain, characterize the nature, location, frequency, precipitating factors, and severity of your patient's pain." [Filing No. 13-12 at 33.] The Court notes that Dr. Roth did not focus on Mr. Morris' complaints of back pain any more than his other health issues. For example, Dr. Roth also noted that Mr. Morris suffered from obesity, a "history of CVA with resulting left arm pain and weakness," and post-traumatic stress disorder. [Filing No. 13-12 at 33.] He also noted that Mr. Morris had arm and leg pain, weakness and hyper-reflexion in his left arm

and leg, an unsteady gait, and that his "[p]hysical limitations would affect [his] ability to do high stress and PTSD would affect emotional stress." [Filing No. 13-12 at 33-34.]  He concluded his report by stating "[w]hile pain and weakness are significant I also think his PTSD is significant. Frederick has made definite improvement and is working to turn his life around, but I am unsure whether he could handle working at this time given the multiple issues noted above." [Filing No. 13-12 at 37.]  In other words, Dr. Roth's responses in the questionnaire do not indicate a focus on Mr. Morris' back pain, and the Court is puzzled by the ALJ's finding that Dr. Roth took his reports of back pain "at face value without objective corroboration."  [Filing No. 13-2 at 24-25.]  The evidence simply does not indicate that Dr. Roth "based his assessment heavily" on subjective reports of back pain.  [*See* Filing No. 13-2 at 24.]

The ALJ also notes that Dr. Roth's opinion is "at odds with the conservative treatment [Mr. Morris] received aside from the stroke and cardiac incidents with brief hospitalizations.  [Mr. Morris'] long-term treatment was more conservative, composed of often minimal examinations, and came in the form of outpatient visits and medications." [Filing No. 13-2 at 25.]  But the Court agrees with Mr. Morris that he cannot have been expected to pursue other treatments in the years following his stroke, given the fact that he was incarcerated.  And it is not clear that treatment nearly a decade after the stroke, when he was released, would have made an impact on his health.

In short, the Court finds that the ALJ's explanations for giving Dr. Roth's opinion limited weight are inadequate, because the ALJ did not build a logical bridge from the evidence to the ALJ's conclusion.

### 2. Dr. Djodjeva

The ALJ found that Dr. Djodjeva's opinion was entitled to limited weight because Mr. Morris' vision test was "at odds with the limitations Dr. Djodjeva assesses," the opinion "came

from a one-time examination and appeared to have been heavily based on the claimant's subjective reports," the opinion that he could not perform any posturing is at odds with his conservative treatment, there is no indication he was a surgical candidate to repair joints, most of his treatment involved outpatient examinations and medication, and Mr. Morris declined to perform several maneuvers during the examination so those movements went untested. [Filing No. 13-2 at 25.]

The Magistrate Judge concluded in his Report and Recommendation that the ALJ was justified in giving limited weight to Dr. Djodjeva's opinion because Dr. Djodjeva failed to complete a part of the Medical Source Statement form which required her to identify particular medical or clinical findings which supported her assessment. [Filing No. 22 at 14.] The Magistrate Judge also agreed with the ALJ that Dr. Djodjeva's finding that Mr. Morris could not read very small print was contradicted by the results of Mr. Morris' vision test, and that the limitations Dr. Djodjeva found for Mr. Morris' left hand did not support a finding of disability. [Filing No. 22 at 14-15.]

Mr. Morris argues in his Objection that Dr. Djodjeva's report was not heavily based on Mr. Morris' subjective reports but that Dr. Djodjeva was simply documenting Mr. Morris' symptoms, and also that Dr. Djodjeva included objective evidence to support her findings. [Filing No. 23 at 10-11.] Mr. Morris also notes that the ALJ found that Dr. Djodjeva's examination of Mr. Morris' vision was at odds with the visual limitations the ALJ assessed, but that Dr. Djodjeva only found that Mr. Morris could not read very small print and this finding was "largely irrelevant to [the] claim to statutory disability benefits." [Filing No. 23 at 11.] Mr. Morris also argues that Dr. Djodjeva's and Dr. Roth's opinions are consistent, and that the ALJ never presented Mr. Morris' manipulative limitations to the vocational expert. [Filing No. 23 at 12.] Mr. Morris notes that the vocational expert testified that a person performing sedentary work would need to be able to carry

items around the office while standing or walking, and that it is not clear how Mr. Morris could do that if he is holding a cane in one hand and has "severe limitations grasping and reaching with his other non-dominant hand." [Filing No. 23 at 12-13.]

As the Court discussed above, the ALJ's rejection of Dr. Djodjeva's report was flawed. Dr. Djodjeva based her opinion on objective criteria, including whether Mr. Morris could zip, unzip, button, and unbutton. The ALJ does not explain why she discounted those findings. Moreover, Dr. Djodjeva tied her findings to Mr. Morris' earlier stroke. [*See* Filing No. 13-12 at 38-40 (Dr. Djodjeva noting during November 22, 2013 examination that Mr. Morris "suffered a stroke in 2003, during the time when he was incarcerated. He has a left-sided weakness and balance impairment since then," and that "gait was unstable, with small steps, limping with the left leg, using a cane. He [is] able to walk without the cane for a few steps. The cane is medically necessary for the patient's support." Dr. Djodjeva also noted that Mr. Morris' "[d]ecreased grip strength on the left [was] 4/5…The patient has normal gross and impaired fine finger manipulative ability with the left hand. The patient can not zip-unzip, button-unbutton with the left hand, he is able to pick a quarter coin with both hands." Dr. Djodjeva noted under "Impression," "CVA with left sided weakness" and "impaired balance and gait").]

As to Dr. Djodjeva's findings regarding Mr. Morris' vision, she merely found that he could not read very small print. [Filing No. 13-12 at 49.] There is no indication that this finding factored into Dr. Djodjeva's conclusions, nor into the ALJ's RFC. Additionally, and as discussed above, the Court finds the ALJ's statement that some of Dr. Djodjeva's findings are at odds with Mr. Morris' conservative treatment are not supported by sufficient explanation. Considering that Mr. Morris was incarcerated when he had his stroke, that his cane use and left upper extremity weak-

ness are linked to that stroke through the medical records (and the absence of any other explanation), and that it is not clear whether treatment many years after the stroke would have been beneficial, the Court finds that it was error for the ALJ to rely on Dr. Morris' "conservative treatments" to reject Dr. Djodjeva's opinion.

Additionally, the Court agrees with Mr. Morris that the ALJ did not present Mr. Morris' manipulative limitations that Dr. Djodjeva found to the vocational expert. [*See* Filing No. 13-2 at 68-73.] This is understandable, considering that the ALJ gave limited weight to Dr. Djodjeva's opinion. But because the Court has found that the ALJ did not adequately explain, in a logical fashion, why she gave Dr. Djodjeva's opinion limited weight, those limitations should have been presented to the vocational expert. Had they been, it appears more likely than not that Mr. Morris would not be able to perform the jobs the vocational expert opined he could perform. [*See* Filing No. 13-2 at 74 (Mr. Morris' counsel questioning ALJ as follows: "Q: Okay. Let's see. If – and you, the jobs that you gave us, do just have frequent handling and fingering as well, right as defined by the SSE? Or SCA, I'm sorry. A: Right").] The ALJ improperly discounted Dr. Djodjeva's opinion and, as a result, did not include important limitations in Mr. Morris' RFC.

### 3. Credibility Determination

The ALJ found that "Mr. Morris' subjective complaints and alleged limitations are disproportionate to limitations the objective evidence proves related to his medically determined impairments." [Filing No. 13-2 at 25.] The ALJ stated that Mr. Morris had "a remote stroke with some residual weakness," noted that Mr. Morris was cleared for kitchen duty while incarcerated, and only used his cane periodically, and concluded that "[w]hile there seems to be some deterioration in his physical abilities since his release from prison, overall the evidence does not preclude sedentary work activities." [Filing No. 13-2 at 25.]

The Magistrate Judge found that the ALJ's credibility determination was sufficiently thorough, and that the ALJ "gave specific reasons supported by the record for finding [Mr. Morris] to not be credible…." [Filing No. 22 at 17.]

Mr. Morris argues in his Objection that his objective allegations were supported by the objective evidence in the record, and that the ALJ's "bare assertions that are contradicted by the accompanying factual analysis do not provide a logical and accurate bridge between the evidence and those conclusions." [Filing No. 23 at 13-14.]

As discussed above, the ALJ did not provide a logical bridge from the medical evidence to her conclusions regarding Mr. Morris' left-sided weakness, unsteady gait, and use of a cane (indicating disorganization in his lower left extremity), his decreased grip strength and inability to zip, unzip, button, and unbutton (indicating disorganization in his upper left extremity), Dr. Roth's opinion, and Dr. Djodjeva's opinion. As a result, the ALJ's conclusion that Mr. Morris' subjective complaints do not match with the objective evidence is flawed because the ALJ improperly discounted much of that objective evidence.

In sum, because the ALJ did not give adequate weight to the opinions of Dr. Roth and Dr. Djodjeva consistent with substantial evidence in the record, and since the ALJ improperly discounted Mr. Morris' credibility based on the weight she gave to that evidence, the ALJ's RFC determination is flawed and remand is necessary on that ground as well.

### C.  The ALJ's Step Five Determination

At Step Five, the ALJ found that Mr. Morris was capable of performing several jobs in the national economy, including bench hand, final assembler, and document preparer. [Filing No. 13-2 at 26-27.] The Magistrate Judge found that the ALJ sufficiently included the limitations in Mr. Morris' RFC when questioning the vocational expert because: (1) she asked whether he could

perform certain jobs if he was required to use "an assisted device for [his] dominant hand," to which the vocational expert said that would not apply since he would be performing sedentary work; and (2) the ALJ and the vocational expert "implicitly considered" the normal break periods that were part of Mr. Morris' RFC, and that accounted for Mr. Morris' need to change positions. [Filing No. 22 at 18-19.]  In his Objection, Mr. Morris argues that the ALJ never made the vocational expert aware of the need for him to use a cane and to change position while at work. [Filing No. 23 at 14.]

The Seventh Circuit Court of Appeals has instructed that "the hypothetical [questions] posed to the vocational expert…must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 856 (7th Cir. 2014).  Generally, the ALJ is required to orient the vocational expert to the totality of a claimant's limitations. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010).  The Court agrees with Mr. Morris that the ALJ did not sufficiently apprise the vocational expert of Mr. Morris' limitations regarding using a cane and needing to change positions at work.  Specifically, the ALJ did not question the vocational expert regarding whether an individual using a cane, who needs to change positions – not necessarily during break time – could perform the jobs that the vocational expert listed. [Filing No. 13-2 at 67-70.]  Additionally, in any event, the ALJ's Step Five finding is based on an RFC determination that the Court has already found may be flawed due to the ALJ's inadequate explanation of the weight she gave to certain evidence.  Accordingly, remand based on the ALJ's Step Five determination is also necessary.

### IV.
#### CONCLUSION

For the foregoing reasons, the Court **SUSTAINS** Mr. Morris' Objection to the Magistrate Judge's Report and Recommendation.  [Filing No. 22; Filing No. 23.]  The Court **VACATES** the

- 17 -

ALJ's decision denying Mr. Morris supplemental security income and **REMANDS** this matter for further proceedings consistent with this opinion pursuant to 42 U.S.C. § 405(g) (sentence four). Judgment shall issue accordingly.

On remand, the ALJ should reconsider whether Mr. Morris meets Listing 11.04.  In making that finding, the ALJ must develop a logical bridge as to whether the medical evidence shows that Mr. Morris has persistent disorganization of motor function in two extremities, due to his stroke, which results in a loss of movement, gait, and station.  The ALJ should also reconsider whether the opinions of Dr. Roth and Dr. Djodjeva should be given more significant weight, and should ensure that she adequately explains her reasons for her conclusion.  Based on this reconsideration, the ALJ should reformulate Mr. Morris' RFC if necessary, and should make sure to include every limitation in the RFC when posing hypothetical questions to the vocational expert.

Date: November 25, 2015

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**